JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Kevin Jackson, 5086 Royal Birkdale Avenue Waldorf, MD 20602

**(b)** County of Residence of First Listed Plaintiff: **Charles**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
The Day Law Practice, LLC, 110 North Washington Street, Suite 300 #30 Rockville, MD 20850, 301-762-2675

## DEFENDANTS
Alejando Mayorkas, Secretary of Homeland Security, 300 7th Street S.W. Washington, DC 20024 (in his official capacity)

County of Residence of First Listed Defendant: **District of Columbia**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq

Brief description of cause:
Sexual harassment, hostile work environment, retaliation for EEO activity, racial discrimination

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 300,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE: _____
DOCKET NUMBER: _____

DATE: 8/30/2022

SIGNATURE OF ATTORNEY OF RECORD: *Charles W. Day, Jr. #14539*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

[Print]  [Save As...]  [Reset]

**UNITED STATES OF AMERICA**
**U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| KEVIN JACKSON<br>5086 Royal Birkdale Avenue<br>Waldorf, MD 20602<br>Charles County, Maryland<br><br>    Plaintiff,<br><br>        v.<br><br>ALEJANDRO MAYORKAS,<br>U.S. DEPARTMENT OF<br>HOMELAND SECURITY<br>300 7th Street S.W.<br> Washington, DC 20024<br><br>    Defendant. | Case No.<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

1.  Plaintiff Kevin Jackson, by and through undersigned counsel, hereby files this Complaint of employment discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* based on his sex (male) and his race (African American) and unlawful retaliation for his opposition to harassment and discrimination and his participation in the Agency's EEO process when he was subjected to harassment and a retaliatory reassignment.

2.  Mr. Jackson is seeking any and all relief available pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; 42 U.S.C. § 1981a, and any other applicable anti-discrimination or anti-retaliation statute, including

but not limited to compensatory damages up to the statutory maximum of $300,000, restoration of leave, the reasonable attorney fees at market rates and expenses of filing this complaint, and any and all other relief which this Honorable Court shall deem just and proper.

## I.   Parties

3. Plaintiff Kevin Jackson (African American male) was GS-14 Management Analyst with the Identity and Information Management Division (IIMD) of the Department of Homeland Security (DHS) from June 2017 until November 2020. Mr. Jackson resides at 5086 Royal Birkdale Avenue Waldorf, MD 20602

4. Defendant Alejandro Mayorkas is the Secretary of Homeland Security and is sued in his official capacity only. His address is United States Department of Homeland Security, 300 7th Street S.W., Washington, DC 20024

## II.   Jurisdiction and Venue

5. This United States District Court has personal jurisdiction over the Defendant United States pursuant to 42 U.S.C. § 2000e-5(f)(3).

6. Pursuant to 42 U.S.C. § 2000e-5(f)(3), venue is proper

> in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any

2

such district, such an action may be brought within the judicial district in which the respondent has his principal office.

*Id.*

7. Although the unlawful employment practices were committed in the District of Columbia, the Defendant's principal, indeed only, office, the responsible management officials, relevant witnesses, and, on information and belief, relevant documents are now located in the office of the Identity and Information Management Division (IIMD) of the United States Citizenship and Immigration Services Division (USCIS) located at 5900 Capital Gateway Drive, Camp Springs, Maryland.

8. Because the fundamental principle underlying venue is the convenience of the Defendant and easy access to witnesses and documents and bringing this case in the District of Columbia serves none of these ends, venue is proper in the District Court for Maryland pursuant to the other venue provisions of Titles VII. *Id.*

9. Because the IIMD office, which includes its own Office of Human Resources is now located in Maryland, venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3). On information and belief, the Agency therefore maintains relevant personnel documents at this location. Moreover, all the documents relevant to Mr. Jackson's offboarding and conclusion of his employment at the Agency were executed at Camp Springs.

3

10. IIMD's principal office, indeed its only office, is now located in Camp Springs, Maryland, and if no other condition is met, then venue is nevertheless still proper in Maryland.

11. Moreover, at the time Mr. Jackson left federal service at the IIMD in November 2020, he had been working remotely out of Camp Springs, Maryland since their relocation in 2020 during the pandemic.

12. In addition, the convenience of both parties is served because Mr. Jackson also resides in Maryland.

### III.   Subject Matter Jurisdiction

13. This Complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the United States District Court therefore has subject matter jurisdiction because the case involves a question of federal law, 28 U.S.C. § 1331, and because it is brought against a federal defendant. *Id.*

### IV.   Exhaustion of Administrative Remedies

14. Mr. Jackson timely contacted an EEO counselor at the Department of Homeland Security on April 25, 2018, within 45 days of the Agency's punitive and retaliatory assignment of Mr. Jackson to the agreements area of the Policy, Agreements and Analysis Branch, where instead of doing the policy work for which he was hired and had the requisite training and experience, he was sidelined and

consigned to clerical work involving Agreements and Memoranda of Understanding (MOUs)." *See* 29 C.F.R. § 1614.105(a)(1).

15. Mr. Jackson received his Notice of Right to File a Formal complaint on June 6, 2018, and filed his formal written complaint on June 20, 2018. *See* 29 C.F.R. § 1614.106(b).

16. The Administrative Judge dismissed Mr. Jackson's case at the Equal Employment Opportunity Commission (EEOC) on April 23, 2020, on Mr. Jackson's Motion, so that he could request a Final Agency Decision (FAD), and the Agency issued its FAD on June 8, 2020.

17. Mr. Jackson timely appealed the Agency's FAD to the EEOC's Office of Federal Operations (OFO) on July 7, 2020. *See* 29 C.F.R. § 1614.402(a).

18. OFO issued its decision finding for the Agency on June 2, 2022.

19. Mr. Jackson is filing this Complaint in United States District Court on August 30, 2022, which is within 90 days of the OFO's decision. *See* 29 C.F.R. § 1614.407(c).

20. Mr. Jackson has timely raised the issue of harassment in this case, including harassment based on his race (African American) and reprisal (for opposing harassment and discrimination and participating in the EEO process).

21. Mr. Jackson is adding the basis of sex to his harassment claim because this basis is supported by the facts.

22. The Defendant is not prejudiced by the addition of sex as a basis in Mr. Jackson's Complaint because the proceedings before the Court are *de novo*.

5

## V.     Statement of Facts

23.     Plaintiff Kevin Jackson was a GS-14 Management Analyst Position at IIMD from June 2017 until November 2020.

### A.     Mr. Jackson's first encounter with Evgeni Dobrev in the men's room

24.     On his fifth day of employment at the Agency, Mr. Jackson encountered Mr. Evgeni Dobrev (white male, no known EEO history) in the men's room nearest his office on the second floor of the IIMD building.

25.     At the time, Mr. Dobrev held a GS-14 supervisory position at the Agency, but he was not Mr. Jackson's supervisor.

26.     Mr. Jackson was washing his hands in the men's room, and when he turned to dry them, Mr. Dobrev was standing in front of him and blocking his access to the towels, so that Mr. Jackson could not dry his hands.

27.     Mr. Dobrev began interrogating Mr. Jackson and repeatedly asking him where his supervisor was.

28.     Mr. Dobrev's questioning was aggressive, his tone dismissive, and his presence menacing.

29.     Mr. Jackson was startled and confused by this encounter.

30.     In response to Mr. Dobrev's interrogation, Mr. Jackson held up his hands to signal to Mr. Dobrev that he should back off and responded that he did not know the answers to Mr. Dobrev's question.

31.     However, Mr. Dobrev then told Mr. Jackson that he knew where Mr. Jackson's supervisor was because Mr. Dobrev was apparently playing some kind of game with Mr. Jackson.

32.     Mr. Dobrev continued to hold Mr. Jackson hostage while he talked to him about issues at work totally unrelated to Mr. Jackson.

33.     Because Mr. Jackson had just joined the Agency, he decided he should consider this first, isolated encounter with Mr. Dobrev as "ignorable," but this incident was only the first in a series of hostile acts, and it rapidly became clear that this first encounter was not an innocent one.

### B.    Mr. Jackson's second encounter with Mr. Dobrev in the men's room on the same day.

34.     Later the same day, Mr. Jackson again encountered Mr. Dobrev, this time in the third-floor men's room.

35.     Upon entering the men's room, Mr. Dobrev walked up to Mr. Jackson and asked why he was using the third-floor men's room when his office was on the second floor.

36.     Mr. Dobrev's tone was accusatory, giving Mr. Jackson the impression that he was questioning Mr. Jackson's right to use the men's room on the third floor.

37.     In light of Mr. Jackson's freedom to use any restroom, he initially found Mr. Dobrev's questions so absurd that he concluded that Mr. Dobrev must be

joking, but Mr. Dobrev's questions became increasingly persistent and intense, very much to Mr. Jackson's discomfort.

38.     Mr. Jackson responded that he had a right to use any restroom he wanted to and then escaped from the restroom and began walking down the hall to the stairwell.

39.     When Mr. Jackson turned and caught Mr. Dobrev following him with his eyes glued to Mr. Jackson's rear end, Mr. Dobrev was visibly startled.

40.     As Mr. Jackson continued to walk toward the stairwell to the second floor, where his office was located, Mr. Dobrev began to pursue Mr. Jackson with his stare still fixed on Mr. Jackson's rear end.

41.     Mr. Jackson entered the stairwell and descended one flight to a landing.

42.     Mr. Jackson then saw that Mr. Dobrev had continued to follow him to the stairwell and was looking down at him in a manner that Mr. Jackson subsequently described as "stalkerish" in his report to his first-line supervisor, Chris Walsh (white male), and his second-line supervisor, Paul Johnson (white male).

43.     Mr. Jackson exited the stairwell and returned to his cubicle, and Mr. Dobrev immediately walked slowly past Mr. Jackson's desk with a menacing and intimidating demeanor.

44.     Mr. Dobrev's behavior, which was sexually aggressive and racially offensive, left Mr. Jackson angry and "shell shocked."

### C. Mr. Jackson reports Mr. Dobrev's harassment.

45. Mr. Jackson immediately reported Mr. Dobrev's harassment to the only supervisor available to him, Ms. Magda Ortiz, even though she was not in his chain of command.

46. He was so "angered and shell-shocked" that he could not delay reporting Mr. Dobrev's sexually aggressive and racially discriminatory behavior.

47. Ms. Ortiz told Mr. Jackson that she was just glad that the encounter had not resulted in a "conflict." She instructed Mr. Jackson to share what happened with his supervisors and to document the matter well.

48. The following morning on July 7, 2017, Mr. Jackson spoke with his first level supervisor, Mr. Chris Walsh, and his second level supervisor, Mr. Paul Johnson. He told both supervisors that he felt harassed and mistreated and emphasized that he was concerned about the possible racial motives for Mr. Dobrev's conduct. Mr. Jackson did not even want to think about it in terms of sexual harassment.

49. As a white male supervisor, Mr. Dobrev was in a position to exercise power over Mr. Jackson.

50. Mr. Walsh and Mr. Johnson told Mr. Jackson that they were aware of what had happened the day before, July 6, 2022, and that they strongly agreed that Mr. Jackson and Mr. Dobrev needed to be separated.

51. Mr. Johnson also told Mr. Jackson that he would "speak to" Mr. Dobrev regarding the situation.

9

52. Mr. Jackson told both Mr. Walsh and Mr. Johnson that Mr. Dobrev had been staring at his backside as Mr. Jackson walked down the hall and the stairwell.

53. Mr. Darrell Enoch (African American male) was the only other African American male employee in the branch they shared within IIMD.

54. In the course of the next several weeks and months, Mr. Enoch began telling Mr. Jackson about the ways in which Mr. Dobrev, who was Mr. Enoch's first-line supervisor, had been sexually harassing him.

55. Mr. Enoch's reports of the ways in which Mr. Dobrev treated him exacerbated Mr. Jackson's concerns for his job and his safety.

56. On at least one occasion, Mr. Dobrev wrote words of a sexual nature to Mr. Enoch.

57. On another occasion, Mr. Dobrev gave Mr. Enoch female perfume samples and told Mr. Enoch he should choose one of the fragrances and wear it.

58. Mr. Dobrev talked about unzipped pants in Mr. Enoch's presence.

59. He also would get uncomfortably close to Mr. Enoch and breathe on him.

60. These acts, which Mr. Enoch faithfully reported to him, enhanced the general and pervasive hostility that Mr. Jackson felt in the workplace.

61. Like Mr. Jackson, Mr. Enoch also reported Mr. Dobrev's harassment to Mr. Johnson, but Mr. Johnson did not take any effective action, and Mr. Enoch subsequently left the Agency.

62. Because of the fear that Mr. Dobrev had engendered in Mr. Jackson both directly and through his more flagrant sexual intimidation of Mr. Enoch, Mr. Jackson began to go outside the building for bathroom breaks, which he took at neighboring locations despite rain, snow, and bitterly cold temperatures because he feared that Mr. Dobrev would assault him in one or more of the bathrooms in the building. Mr. Jackson's fear of using Agency restrooms had an obvious adverse impact on his ability to perform his job functions.

63. Mr. Dobrev also presents himself in a sexually aggressive manner outside the workplace. For example, he maintains a locked TikTok account under the username "evdca" with over 1,600 followers, and the majority of the visible pictures show him topless in a bathing suit wearing aviator sunglasses with a drink.

64. Mr. Dobrev is very overt about his sexual preference for men.

### D. Mr. Jackson follows up his opposition to discrimination at the Agency and begins formal participation in the EEO process.

65. In November 2017, Mr. Enoch filed an EEO complaint against the Agency alleging that Mr. Dobrev was harassing him and creating a hostile work environment.

66. Mr. Jackson formally agreed to be a witness in Mr. Enoch's case.

**E.    The Agency fails to live up to its asserted commitment to protect Mr. Jackson**

67.    Contrary to his earlier agreement to separate Mr. Jackson and Mr. Dobrev, Mr. Johnson invited Mr. Dobrev to a meeting with Mr. Jackson in December 2017.

68.    Mr. Dobrev was clearly unfamiliar with the matters to be addressed at the meeting, his comments were off base, and there was no reason for his presence other than to intimidate, harass, and retaliate against Mr. Jackson.

69.    Mr. Jackson protested Mr. Dobrev's presence at the meeting to Mr. Johnson, who had previously agreed five months earlier, along with Mr. Walsh, that Mr. Jackson and Mr. Dobrev were to be completely separated.

70.    Mr. Johnson had no explanation for Mr. Dobrev's presence and only reiterated that he would "talk to" Mr. Dobrev.

71.    In January 2018, Mr. Dobrev held a loud conversation with two individuals who were in cubicles next to Mr. Jackson, and after loud good-bye to his colleagues, he pointedly said "and you, too, Kevin" in defiance of the Agency's alleged no contact order.

72.    Mr. Jackson again complained to Mr. Johnson, who did nothing other than to say once again that he would "talk to" Mr. Dobrev.

73.    Contrary to the DHS's Anti-Harassment Program, Instruction Number 256-01-001, even after Mr. Jackson had complained three times, DHS conducted no fact finding, did no investigation, spoke with no witnesses, and issued no reports.

**F.     Agency supervisors set Mr. Jackson up by not informing him that he had to report to work during a government shutdown.**

74.     On January 22, 2018, the government shut down.

75.     At the time, Mr. Jackson had not been informed that his Agency was not affected by the shutdown. Consistent with usual federal practice, he did not report to work.

76.     Agency management did not contact Mr. Jackson until 12:00 p.m., when Mr. Joseph Martinez, a Supervisory Management and Program Analyst, called Mr. Jackson to ask why he was not at work.

77.     There was no reason why neither Mr. Johnson nor Mr. Walsh, his first- and second-line supervisors could not have called him before his workday was almost over, and they then required him to take a day of leave.

78.     Mr. Jackson feared that the Agency intended to take disciplinary action against him.

79.     Mr. Martinez, Mr. Johnson's, and Mr. Walsh's actions were one more event in the hostile work environment to which the Agency subjected Mr. Jackson.

**G.     Despite Mr. Jackson's repeated complaints about Mr. Dobrev's harassment and the Agency's promises to separate Mr. Dobrev and Mr. Jackson, the Agency promotes Mr. Dobrev and places him in a position of supervisory authority over Mr. Jackson.**

80.     In April 2018, the Agency promoted Mr. Dobrev from a GS-14 to a GS-15, and on April 18, 2018, it made him Mr. Jackson's acting second-line supervisor.

13

It could not place him in the position permanently because he did not have the requisite time in grade.

81. Mr. Johnson knew that Mr. Dobrev was being placed in Mr. Jackson's chain of command and had input into the decision.

82. In addition, Mr. Jackson was removed from policy making and reassigned to clerical work involving agreements and Memoranda of Understanding, a severe diminution of his duties and responsibilities that was inconsistent with his knowledge and qualifications.

**H. Having placed Mr. Jackson in a position for which he was overqualified and unsuited, the Agency refused to reassign him to a position outside of Mr. Dobrev's supervision and doing work consistent with his knowledge and experience.**

83. In response, Mr. Jackson requested on April 19, 2018, that he be reassigned to a position outside of Mr. Dobrev's chain of command.

84. Mr. Johnson, Deputy Chief Brian Broderick, and Chief of the Records Division Eunice Sohn together refused Mr. Jackson's request to be transferred out of the line of supervision of a man about whom Mr. Jackson had repeatedly complained.

85. Mr. Jackson contacted an EEO counselor to complain of harassment and retaliation on April 25, 2018.

86. Mr. Dobrev left IIMD to take another job at the United States Postal Service in the fall of 2018. However, even though Mr. Dobrev was still an employee of the federal government, the Agency's EEO investigator failed to interview him.

14

87. The Agency and Mr. Dobrev have inflicted significant emotional pain and suffering on Mr. Jackson, to the extent that he left federal service altogether in November 2020.

## VI.    Claims

### A.    Count I: Harassment based on sex

88. Based on the facts in the preceding paragraphs, Defendant unlawfully subjected Plaintiff Kevin Jackson to discrimination and harassment based on his sex (male) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* when it allowed Evgeni Dobrev to engage in severe or pervasive unwanted conduct that altered the terms and conditions of Mr. Jackson's workplace, and rather than taking prompt and effective corrective action in response to Mr. Jackson's complaints and those of Mr. Darrell Enoch, instead promoted Mr. Dobrev and placed Mr. Jackson under his supervision.

### B.    Count II: Harassment based on race

89. Based on the facts in the preceding paragraphs, Defendant unlawfully subjected Plaintiff Kevin Jackson to discrimination and harassment based on his race (African American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* when it allowed Evgeni Dobrev (White) to engage in severe or pervasive unwanted conduct that altered the terms and conditions of Mr. Jackson's workplace, and rather than taking prompt and effective corrective action in response to Mr. Jackson's complaints and those of Mr. Darrell Enoch (African

American male), instead promoted Mr. Dobrev and placed Mr. Jackson under his supervision.

### C.     Count III: Harassment based on reprisal

90.    Based on the facts in the preceding paragraphs, Defendant unlawfully subjected Plaintiff Kevin Jackson to discrimination and harassment based on reprisal for protected EEO activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* when it allowed Evgeni Dobrev to engage in severe or pervasive unwanted conduct in response to Mr. Jackson's complaints and those of Mr. Darrell Enoch (contemporaneous EEO case naming Mr. Dobrev) that altered the terms and conditions of Mr. Jackson's workplace, and rather than taking prompt and effective corrective action, instead promoted Mr. Dobrev and placed Mr. Jackson under his supervision.

### D.     Count IV: Retaliatory Reassignment

91.    Based on the facts in the preceding paragraphs, Defendant unlawfully subjected Mr. Jackson to retaliation for his opposition to discrimination when he complained that he was being harassed and for his participation in Mr. Enoch's EEO complaint in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* when it reassigned him to a position supervised by Mr. Dobrev, about whom both he and Mr. Enoch had complained of harassment because they are African American men toward whom Mr. Dobrev had expressed coercive and threatening sexual interest.

### E.   Count V: Retaliatory Reassignment and Reduction of Duties

92.   Based on the facts in the preceding paragraphs, Defendant unlawfully subjected Mr. Jackson to retaliation for his opposition to discrimination when he complained that he was being harassed and for his participation in Mr. Enoch's EEO complaint in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* when it reassigned him to a clerical position with diminished duties that reported to Mr. Dobrev, about whom both he and Mr. Enoch had complained of harassment because they are African American men toward whom Mr. Dobrev had expressed coercive and threatening sexual interest.

### VII.   Relief Requested

93.   Mr. Jackson requests any and all relief available pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* 42 U.S.C. § 1981a, and any other applicable anti-discrimination statute, including but not limited to the following:

   a.   The maximum compensatory damages available at trial up to the statutory maximum of $300,000, including but not limited to damages for emotional and physical distress, damage to reputation, and any medical or other expenses incurred as a direct result of the Agency's discriminatory and retaliatory actions;

   b.   Restoration of all annual and sick leave taken as a result of the Agency's discriminatory and retaliatory actions;

17

    c.    The reasonable attorney fees at prevailing market rates and expenses of bringing this complaint; and

    d.    Any other relief which this Court deems just and proper.

## VIII.  Jury Trial Requested

94.    Mr. Jackson requests trial by jury on all claims triable to a jury.

## IX.  Certification and Closing

95.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

    Respectfully submitted,

    /s/Charles W. Day, Jr.
    CHARLES W. DAY, JR.
    MD Bar No. 14539
    The Day Law Practice LLC
    110 North Washington Street
    Suite 300-30

                                                                             Rockville, MD 20850
                                                                             (301) 762-2675
                                                                             (844) 554-5506 (fax)
                                                                             billday@daylawpractice.com

August 30, 2022                                       Attorney for Plaintiff

Assisted by Kelly S. Buchanan, Esq.