UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KEVIN JACKSON,

    Plaintiff,

    v.

ALEJANDRO MAYORKAS,
*Secretary of Homeland Security*,

    Defendant.

Civil Action No. TDC-22-2193

## MEMORANDUM OPINION

Plaintiff Kevin Jackson, a former employee of United States Citizenship and Immigration Services ("USCIS"), a component agency of the United States Department of Homeland Security, has filed a civil action against Defendant Alejandro Mayorkas, the Secretary of Homeland Security ("the Secretary" or "DHS"), in which he alleges race and sex discrimination, a hostile work environment, and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3) (2018). Pending before the Court is DHS's Motion to Transfer for Improper Venue, or in the Alternative, to Dismiss, which Jackson opposes. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

In June 2017, Plaintiff Kevin Jackson, a Black man, began working as a GS-14 Management Analyst at USCIS in its Identity and Information Management Division ("IIMD") of Immigration Records and Identity Services ("IRIS"). At the time, USCIS, including IIMD, was located in Washington, D.C.

On his fifth day of work, Jackson encountered Evgeni Dobrev, an IIMD supervisor who was not Jackson's direct supervisor, in the second-floor restroom of the IIMD building. Dobrev blocked Jackson's access to towels with which to dry his hands, aggressively and repeatedly asked Jackson where his supervisor was, and "h[e]ld Jackson hostage" as he spoke on work issues unrelated to Jackson. Compl. ¶ 32, ECF No. 1. Later that same day, Jackson and Dobrev had a second encounter, this time in the third-floor restroom, where Dobrev questioned why Jackson was using that particular restroom, then followed Jackson back to his cubicle in a "stalkerish" manner, with his eyes "fixed on Mr. Jackson's rear end." Id. ¶ 40. Jackson immediately reported this incident to his supervisors, who agreed that separation between the two individuals was necessary.

The only other Black man in the branch, Darrell Enoch, shared with Jackson that Dobrev had been sexually harassing him and causing Enoch to feel uncomfortable. Consequently, Jackson felt an increased sense of anxiety relating to Dobrev and began exiting the building to use the restroom elsewhere.

Despite the agreement to separate Jackson and Dobrev, in December 2017, Jackson's supervisor invited Dobrev to attend a meeting at which Jackson was present. In January 2018, Jackson reported that Dobrev spoke directly to him despite the "no contact order." Id. ¶¶ 71–72. Although Jackson complained about these incidents to his supervisors, no action was taken. Instead, according to Jackson, when a government shutdown occurred on January 22, 2018, his supervisors did not inform him until the end of the day that he was required to report for work that day, then required him to take a day of leave.

In April 2018, Dobrev was promoted and became Jackson's acting second-line supervisor, and Jackson was transferred to a role he described as involving "a severe diminution of his duties."

2

*Id.* ¶ 82. Although Jackson requested a reassignment to a position outside of Dobrev's supervision, his request was denied.

On April 25, 2018, Jackson contacted an Equal Opportunity Employment ("EEO") counselor to complain about harassment and retaliation. In the fall of 2018, Dobrev left USCIS to work at the United States Postal Service and was never interviewed about Jackson's allegations by an EEO investigator.

In November 2020, Jackson left federal service. In December 2020, USCIS, including IIMD and its Office of Human Resources, relocated to Camp Springs, Maryland. According to Jackson, the documents relating to his departure from USCIS were executed at the new USCIS location. USCIS, however, has asserted that Jackson's USCIS employment records, including his employment applications, personnel action records, payroll records, benefits records, service credit records, and disciplinary records, are maintained only in an electronic Official Personnel Folder, which resides on a server located in Macon, Georgia. Jackson's performance-related documents from his time at USCIS are also stored only in electronic form and are maintained in USCIS's Enterprise Collaboration Network, which is housed in a Microsoft cloud environment known as Azure, with the data spread out on servers throughout the country with "no single location where the data is retained." Joint Record ("J.R.") 5, ECF No. 28.

## DISCUSSION

In its Motion, DHS seeks transfer of this case to the United States District Court for the District of Columbia pursuant to Federal Rule of Civil Procedure 12(b)(3) on the grounds that venue is not proper in the District of Maryland. Alternatively, it seeks dismissal of Jackson's claims under Rule 12(b)(6). Because the Court finds that venue is not proper in this District, it will transfer the case and need not and will not address the arguments for dismissal on the merits.

I.   **Legal Standard**

On a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the plaintiff has the burden to put forth a *prima facie* showing that venue is proper in the district in which the case was filed. *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 679–80 (D. Md. 2010). The court may consider evidence outside the pleadings and is to view the facts in the light most favorable to the plaintiff. *Aggarao v MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365–66 (4th Cir. 2012); *Sucampo Pharm. v. Astellas Pharma*, 471 F.3d 544, 549–50 (4th Cir. 2006) (treating a motion to dismiss based on a forum-selection clause as a Rule 12(b)(3) motion so as to allow "the court to freely consider evidence outside the pleadings"); *Taylor v. Shreeji Swami, Inc.*, No. PWG-16-3787, 2017 WL 1832206, at *1 (D. Md. May 8, 2017) (stating that the court may consider evidence outside pleadings on a motion to dismiss for lack of venue).

II.  **Venue**

By statute, venue in a Title VII case is limited to: (1) any judicial district in the State in which the unlawful employment practice is alleged to have been committed; (2) the judicial district in which the employment records relevant to such practice are maintained and administered; or (3) the judicial district in which the plaintiff would have worked but for the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(f)(3). "[I]f the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has [its] principal office." *Id.*

A.   **Where the Unlawful Employment Practice Occurred**

As to the first option for venue in a Title VII case, it is undisputed that the alleged unlawful employment practice was committed in the District of Columbia, not Maryland. *See* Compl. ¶ 7.

Thus, under this prong, venue is proper in the United States District Court for the District Columbia, but not in the District of Maryland.

### B. Where the Employment Records Are Located

Jackson primarily argues that venue is proper in Maryland under the second prong of the venue statute, which provides that venue lies in "the judicial district in which the employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e–5(f)(3). For purposes of this provision, this district is the one in which "the complete, 'master' set of employment records is maintained and administered." *Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361, 362–63 (D.D.C. 1988); *see Abraham v. Burwell*, 110 F. Supp. 3d 25, 30 (D.D.C. 2015). The fact that some of the employment records, such as those relating to the EEO investigation, are found in a particular district does not establish venue. *See Abraham*, 110 F. Supp. 3d at 30 (stating that venue was not proper in the District of Columbia under the second prong even though records relating to the EEO investigation were retained there because the "master set" of the plaintiff's employment records was maintained in Maryland); *Amirmokri v. Abraham*, 217 F. Supp. 2d 88, 90–91 (D.D.C. 2002) (holding that venue was not proper in the District of Columbia even though the records relating to the alleged unlawful employment practice complaint and investigation were maintained there, because the "employment records" were maintained and administered in Maryland).

With the advent of electronically stored records, courts have generally concluded that for purposes of the second prong, when the "employment records" are maintained and administered electronically, the location of the server on which they are retained establishes the location of the records. *See, e.g., Cole v. Boeing Co.*, 901 F. Supp. 2d 47, 52 (D.D.C. 2012) (holding that venue was not proper in the District of Columbia under the employment records prong because the

records were maintained on a server in Missouri); *Enoh v. Hewlett Packard Enter. Co.*, No. 17-04212, 2018 WL 3377547, at *9 (N.D. Cal. July 11, 2018) (stating that venue was not proper in the Northern District of California under the employment records prong when the records relevant to terminations, hiring, and promotions were maintained on servers outside the state); *Rad v. Cognizant Tech. Sol. Corp.*, No. 20-CV-03497-BRM-ESK, 2020 WL 6383245, at *2 (D.N.J. Oct. 30, 2020) (holding that venue in the District of New Jersey was not proper under the employment records prong because the relevant records were maintained and administered on servers in Ireland and the Netherlands). When the records are stored in a cloud environment not specific to any particular state, courts have found that venue cannot be established based on the employment records prong. *See, e.g., Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 259 (D.D.C. 2013) (rejecting the argument that when the employment records were stored in a cloud environment, without a physical address, venue was established under the employment records prong in a district from which the records were accessible electronically); *Jaiyelo v. Rivian*, No. 22-CV-03982-BLF, 2023 WL 2173188, at *5 (N.D. Cal. Feb. 21, 2023) (finding that venue was not proper in the Northern District of California when the records were stored in a cloud-based folder and there is no evidence that the server containing the records is in the Northern District of California).

Here, although Jackson has asserted that the relevant employment records are necessarily maintained at USCIS headquarters in Camp Springs, Maryland, DHS has submitted undisputed declarations stating that Jackson's official personnel records are located on a server in Macon, Georgia, and that his performance-related documents are stored in a cloud environment with servers in multiple locations. The fact that, as Jackson has asserted, certain employment records relating to his departure were signed in Maryland does not establish that the "master set" of his employment records is located in Maryland. *See Abraham*, 110 F. Supp. 3d at 30. Because,

however, the master set of relevant employment records is on servers outside of Maryland, the Court finds that Jackson cannot establish venue in Maryland based on the employment record prong of the Title VII venue provision. *See, e.g., id.*; *Abou-Hussein*, 953 F. Supp. 2d at 259.

    **C.**    **Where the Plaintiff Would Have Worked**

Jackson has not invoked the third prong of the Title VII venue provision, under which plaintiffs may file Title VII claims in the district in which they would have worked but for the alleged discrimination. 42 U.S.C. § 2000e–5(f)(3). Nevertheless, the Court finds this prong to be inapplicable to this case. This prong is most relevant in cases in which a person was not hired for a position. *See, e.g., Harley v. Chao*, 503 F. Supp. 2d 763, 765–66, 774 (M.D.N.C. 2007) (holding that venue would be proper in the Western District of North Carolina because the plaintiff alleged discrimination in the failure to hire him for a position at the Department of Labor office located in that district). Although Jackson asserts that because of the COVID-19 pandemic, he was working remotely from his home in Maryland, Jackson left USCIS in November 2020, and USCIS did not relocate to Camp Springs, Maryland until December 2020. Where Jackson remained voluntarily at USCIS for approximately two years after Dobrev left the agency, and he has not alleged that the alleged discrimination and harassment constituted a constructive discharge, there is no plausible basis to conclude that Jackson would have worked at USCIS in Maryland but for the alleged discrimination. *See Wheeler v. Azar*, No. 20-31, 2020 WL 2490037, at *1 (D. Md. May 14, 2020) (finding that venue was not proper in Maryland in part because the plaintiff did not even allege that he would have worked in Maryland but for the alleged unlawful employment practice).

    **D.**    **Principal Office**

Finally, although the Title VII venue provision states that "if the respondent is not found within any such district, such an action may be brought within the judicial district in which the

respondent has his principal office," 42 U.S.C. § 2000e-5(f)(3), this provision is inapplicable because DHS acknowledges, by filing the Motion, that the Secretary is located at DHS headquarters in Washington, D.C. and is subject to suit in the United States District Court for the District of Columbia.

Because Jackson has not established venue under any of the prongs of the Title VII venue provision, the Court will grant the Motion and transfer this case to the United States District Court for the District of Columbia, the district in which "the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3).

## CONCLUSION

For the foregoing reasons, the Motion to Transfer for Improper Venue will be GRANTED, and this case will be transferred to the United States District Court for the District of Columbia. A separate Order shall issue.

Date: August 16, 2023

THEODORE D. CHUANG
United States District Judge